# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY LANEY** | ) | No. 2:23-cv-56 |
| | ) | |
| **Plaintiff,** | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| **COUNTY OF ALLEGHENY** | ) | |
| | ) | |
| **Defendant.** | ) | |

Filed on Behalf of:
Plaintiff, Tammy Laney

Counsel of Record for
This Party:

James L. Welsh, III, Esquire
PA I.D. #58790
THE WELSH LAW GROUP LLC

3875 Franklintowne Court
Suite 130
Murrysville, PA  15668
724-519-2122

e-mail:
jwelsh@thewklaw.com

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA LANEY | ) No. 2:23-cv-56 |
|    Plaintiff | ) |
| vs. | ) |
| COUNTY OF ALLEGHENY | ) |
|    Defendant. | ) JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Tamara Laney, by undersigned counsel brings this action seeking legal and equitable relief and in support alleges the following:

### JURISDICTION

1. The Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(t)(l); 42 U.S.C. §1981A and 28 U.S.C. §1331.

2. Plaintiff has satisfied all administrative prerequisites to suit under Title VII because:

    a. She filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

    b. The EEOC issued a Notice of Right to Sue on October 18, 2022.

    c. This Complaint is filed within 90 days of receipt of that notice.

### THE PARTIES

3. Tamara Laney worked for Defendant, until 2021 as a correctional officer at the Allegheny County Jail. She began her employment with Defendant on November 2, 2015 and was fired on December 2, 2021.

4. Defendant, County of Allegheny has a business address of 920 City-County Building, 414 Grant Street Pittsburgh PA 15219. Defendant regularly conducts business in

1

Pennsylvania. At all times relevant hereto, it was Laney's employer and was an Employer, within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

## FACTUAL BACKGROUND

5. Ms. Laney is a life-long devout member of the Christian faith. She has been active in her local church for many years.

6. In response to the Covid-19 vaccine mandate, Plaintiff submitted a religious exemption. In her exemption request, she informed Defendant that she believes that her body is a holy temple of the Holy Spirit and that being vaccinated would entail going against her convictions and the commands of God. Plaintiff provided two emails outlining why the vaccine violated her sincerely held religious beliefs which were all ignored by Defendant.

7. At no time did Defendant ever engage in any meaningful interactive process with Plaintiff to determine whether there existed any reasonable accommodations for her sincerely held religious beliefs. It is believed and therefore averred that the Defendant never had any intention of granting Plaintiff's religious exemption. Rather, the Defendant's intention was to deny all or as many exemptions as possible and force all of its workforce to be vaccinated.

8. Ms. Laney also has a sincerely held religious belief that every child's life is sacred because they are made in the image of God. *See Genesis* 1:26-27 (NABRE).

9. It is believed and therefore averred that Defendant had supplied Plaintiff with reasonable accommodations in the form of personal protection equipment testing, social distancing and/or sanitizing throughout the pandemic. These reasonable accommodations suddenly became an undue hardship when the vaccine mandate was put into place on December 1, 2021. Defendant does not require visitors and/or inmates in its facility to be vaccinated.

10. Respondent was allowed to continue to work until December 1, 2021. On that day,

Defendant informed Plaintiff that she was immediately terminated. Her termination was solely due to her unvaccinated status. Defendant perceived Plaintiff as disabled due to her unvaccinated status.

11. Plaintiff offered to continue to use the reasonable accommodations listed above in lieu of getting the Covid 19 vaccine. Defendant ignored her requests and she was terminated.

12. Defendant never challenged the sincerity or validity of Plaintiff's sincerely held religious beliefs. At no time did the Defendant engage in the interactive process to question her beliefs against the vaccine. Rather, Defendant simply admitted by silence or acquiesced that Plaintiffs belief were sincerely held. Defendant has waived the right to challenge the sincerity or validity of Plaintiff's religiously held belief against the vaccination.

13. Defendant's sole reason given for denying Plaintiff's religious exemption was it would create an undue hardship on Allegheny County.

14. It is believed and therefore averred, that Defendant engaged in a policy of a blanket denial of all requests for religious exemptions and instead claiming undue hardship as Defendant's goal was to seek 100% vaccination of all its employees and to purge its payroll of the unvaccinated for Defendant's financial gain.

15. Ms. Laney had a sincerely held religious belief that her body is a temple of the Holy Spirit, and that to inject medical products that were not created by God himself is unholy and disrespectful to his temple.

16. Ms. Laney requested that the wearing of a mask and her consent to submit to Covid-19 testing at any time, be approved as a reasonable accommodation to receiving the Covid-19 vaccines because of strongly held religious belief precluding the imposition of the vaccines.

17. The aforesaid accommodations were reasonable because, *inter alia,* the OSHA rules

regarding workplace vaccine mandates provided those precise accommodations for employees whose sincerely held religious beliefs precluding imposition of Covid-19 vaccination. *See* 29 C.F.R. §§1910.501(g);and 1910.501(1)(1) *See also* 86 Fed. Reg. No. 212 at 61552-53 (Nov. 5, 2021)(noting wearing face covering and/or testing is acceptable accommodation as matter of law); *id.,* at 61553 (noting testing acceptable accommodation for religious objection as matter of law).

18. Despite Ms. Laney's request for accommodation of her sincerely held religious belief, Defendant refused to accommodate Ms. Laney.

19. Defendant failed to engage in any meaningful interactive process with Plaintiff.

20. Defendant did not offer an alternative accommodation to Ms. Laney requests other than discharge.

21. Rather, in a letter of, Defendant simply fired Ms. Laney because the accommodation would cause an undue hardship.

22. When Defendant instituted the vaccine mandate, all versions of the available vaccine to Plaintiff were not fully approved by the FDA, but were issued under EUA status, which means Plaintiff had the right to accept or reject the vaccine without consequence. Defendant's mandate violated federal law. At no time did Defendant explain the risks and benefits of the vaccine to Plaintiff to allow her to make an informed choice.

## COUNT I

### TITLE VII DISCRIMINATION AND RETALIATION

23. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

24. Defendant fired Ms. Laney because of her religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-(j), and 2000e-2(a)(l).

4

25. Defendant failed and refused to reasonably accommodate Ms. Laney's religious observances and/or practices, in violation of Title VII.

26. As a direct result of Defendant's violation of Title VII, Ms. Laney's has lost wages and other economic benefits of her employment with Defendant, in addition to suffering emotional distress, depression, inconvenience and humiliation.

27. Defendant's policy of denying all exemptions and instead forcing its will upon Defendant to get the vaccine against her religious beliefs constitute outrageous conduct subjecting Defendant to punitive damages.

WHEREFORE, Ms. Laney requests the following:

a. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of Title VII of the Civil Rights Act;
b. That Defendant be ordered to reinstate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;
c. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, experience, training opportunities and other benefits;
d. That the Court award Plaintiff compensatory and punitive damages as a result of Defendant's violations of Title VII of the Civil Rights Act;
e. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates Title VII of the Civil Rights Act;
f. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and
g. That the Court grants Ms. Laney additional relief as may be just and proper.

## COUNT II
### VIOLATION OF EMERGENCY USE AUTHORIZATION PROVISIONS OF THE UNITED STATES CODE, 21 U.S.C. 360bbb-3 seq.

28. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

29. The United States Code provides that:

subject to the provisions of this section, the Secretary (of the Department of

5

> Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."

21 U.S.C. §360bbb-3(a)(l) (emphasis added).

30. For ease of reference, Plaintiffs will refer to the general provisions of 21 U.S.C. §360bbb-3 as the "Emergency Use Authorization Statute" or "EUA Statute."

31. Part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, the statute mandates that all individuals to whom the product approved for Emergency Use may be administered be given the option to accept or refuse administration of the product.

32. Specifically, 21 U.S.C. §360bbb-3(e)(l)(A)(ii)(III), states:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following
>
> Appropriate conditions designed to ensure that individuals to whom the product is administered are informed-
>
> > (I) that the Secretary has authorized the emergency us of the product;
> >
> > (II) of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and
> >
> > (III) **of the option to accept or refuse administration of the product,** of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. §360bbb-3(e)(l)(A)(ii)(I)-(III) (emphasis added).

33. Put simply, the Emergency Use Authorization statute provides that, as a condition of receiving authorization for Emergency Use, all individuals to whom the product may be administered are given the right to accept or refuse administration of the product.

6

34. The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech) are only authorized for use under the Emergency Use Authorization statute and have no general approval under the United States Code.

35. Because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiff, be given the right to accept or refuse administration of the product.

36. The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[1] does not change the EUA status of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EDA since December 23, 2020.[2] According to the EDA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA "are legally distinct" products.[3]

---

[1] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.

[2] EDA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/150386/download.

[3] *Id.* at 3 n.10 (emphasis added).

37. Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[4] Thus, it is not clear when (or if) any Defendant employee will have access to the "approved" COMIRNATY vaccine, leaving all Defendant employees who may elect to receive the "Pfizer" vaccine pursuant to Defendant mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EDA rules.

---

[4] ELA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, *supra* note 4 at 2.

38.     On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines., BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021), Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021).)

39.     In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021.

40.     The Pfizer Letter also makes clear that there is a scientific, manufacturing, and legally significant difference between the Pfizer- BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine.

41.     Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)." (Emphasis added).

42.     Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendant (or any other entity) from making the COVID-19 vaccines mandatory.

43.     All existing vials of the FDA-approved Pfizer-BioNTech COVID-19 vaccine

9

remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

44. On information and belief, the existing vials of the FDA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the FDA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

45. There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

46. In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, <u>there is no sufficient approved vaccine for distribution to the population</u>."

47. Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer- BioNTech Covid-19 Vaccine. (Id.).

48. Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine. ("There is no adequate, approved, and **available alternative** to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added).)

49. Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval and therefore cannot be mandated by Defendant.

50. In addition, consistent with the requirement in the Emergency Use Authorization statute that all potential recipients of the COVID-19 vaccine be informed of the option to accept or refuse the vaccine, the Emergency Use Authorization Fact Sheet for all three of the

10

currently available COVID-19 vaccines specifically states - as required by the Emergency Use Authorization statute- that individuals have the right to refuse administration of the COVID-19 vaccine.

51. Specifically, the Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

52. By imposing its Mandatory COVID-19 Vaccination Policy on Plaintiff and refusing to grant Plaintiff's their requested religious exemption from such mandatory vaccination, Defendant denied Plaintiff her right to accept or refuse administration of the three currently available COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

53. Defendant by denying Plaintiff's the right to accept or refuse administration of the three currently available COVID-19 vaccines, violated the provisions of the Emergency Use Authorization statute.

54. Defendant, by denying Plaintiff's her requested religious exemption and reasonable accommodation, denied Plaintiff's her statutory rights under the United States Code and infringed upon the explicit protections outlined in the Emergency Use Authorization statute.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court declare Defendant's mandate was illegal and in violation of federal law and grant Plaintiff any and all damages allowed by law.

## COUNT III

### ADA

55. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

56. Defendant fired Plaintiff because Defendant perceived Plaintiff as disabled under the Americans with Disability Act. ("ADA")

57. Defendant failed to even engage in the interactive process to discuss Plaintiff's perceived disability in violation of the ADA.

58. The perceived disability in this case is Plaintiff's unvaccinated status.

59. In all other respects, Plaintiff was ready, willing and able to continue her employment with Defendant as a correctional officer. It was only her perceived disability that caused Defendant to fire Plaintiff.

WHEREFORE, Ms. Laney requests the following:

a. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of ADA;
b. That Defendant be ordered to reinstate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;
c. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, experience, training opportunities and other benefits;
d. That the Court award Plaintiff compensatory and punitive damages as a result of Defendant's violations of ADA;
e. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates ADA;
f. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and
g. That the Court grants Ms. Laney additional relief as may be just and proper.

Respectfully submitted,

The Welsh Law Group, LLC

_____
James L. Welsh, III
PA I.D. #58790
Counsel for Plaintiff

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.
Submitted by: Plaintiff
_____
James L. Welsh, III, Esquire
Attorney I.D.  #58790III, Esquire

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY LANEY | ) | No. 2:23-cv-56 |
| Plaintiff, | ) | |
| vs. | ) | |
| COUNTY OF ALLEGHENY | ) | |
| Defendant. | ) | |

## ATTORNEY VERIFICATION

I, James L. Welsh, III, Esquire, certify that I am authorized to make this Verification and I have read the foregoing Complaint and verify that the statements therein are correct to the best of my personal knowledge, information and belief.

This Verification is made subject to the penalties of 18 Pa. C.S.S. §4904, relating to unsworn falsification to authorities, which provides that if I make knowingly false statements I may be subject to criminal penalties.

_1/12/23_
/Date

_____
James L. Welsh, III, Esquire

1